# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CARLOS CARRILLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 05 C 686 |
| JUDGE TIMOTHY J. CHAMBERS, ) | |
| JUDGE GRACE G. DICKLER, ) | John W. Darrah |
| ILLINOIS ATTORNEY GENERAL ) | |
| LISA MADIGAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Carlos Carrillo, *pro se*, filed an Amended Complaint against Defendants, seeking damages and injunctive relief under Title 42 U.S.C. § 1983, § 1985 and § 1986 for alleged violations of Carrillo's Constitutional rights under the Fifth, Sixth, Eleventh, and Fourteenth Amendments. The alleged violations arose out of Carrillo's arrest for violating an order of protection issued by the State's court system. Presently pending before the Court is a joint Motion to Dismiss filed on behalf of Defendants Judge Timothy Chambers, Judge Grace Dickler, and Attorney General Lisa Madigan (collectively, "the Defendants").[1]

## BACKGROUND

The material allegations raised in Plaintiff's Amended Complaint are summarized as follows: On September 29, 2002, Carrillo was charged with domestic battery. On September 30, 2002, Judge Chambers, in the Circuit Court of Cook County, Illinois, issued a plenary order of protection against Carrillo. Carrillo was not notified of the hearing, was not

---

[1] Plaintiff Carrillo also brought suit against the State of Illinois and Richard Devine, the State's Attorney of Cook County, who were dismissed on August 3, 2005 and May 18, 2006, respectively.

present in court, and was not informed of the entry of the order. On October 3, 2002, Carrillo was arrested and criminally charged for violating the order of protection. The following day, Carrillo was brought before Judge Chambers for a bond hearing on the criminal charges. At the bond hearing, the assistant state's attorney appearing in bond court represented to Judge Chambers that the order of protection had earlier been served on Carrillo in court on September 30, 2002. Thereafter, Judge Chambers ordered Carrillo incarcerated without bond. On November 22, 2002, Carrillo filed an unsuccessful motion to vacate the previously entered order. On April 9, 2004, Judge Dickler, in the Circuit Court of Cook County, entered a six-month order of protection against Carrillo. Thereafter, on or about December 17, 2004, Judge Dickler issued a two-year order of protection against Carrillo.

Carrillo seeks money damages and punitive damages, as well as injunctive relief in the form of a federal investigation into the plenary orders issued against him. Carrillo alleges a variety of claims. The claims, however, are not separated into individual counts. Among his claims are that Judge Chambers and Judge Dickler failed to conduct proper judicial proceedings against him, resulting in the issuance of illegal orders of protection against him, and that he has been denied equal protection at all levels of the law in Cook County. Carrillo alleges that Attorney General Madigan "received many letters of grievance from Mr. Carrillo and failed to take any action to ensure that Mr. Carrillo's rights to due process were respected by the prosecutor"; and this caused him to be ". . . denied his Constitutional [r]ight to Equal Protection under the Law as provided by the 14th Amendment of the U.S. Constitution at all levels of the law and, as a result, he and his children suffered a great deal of financial and mental harm."

## LEGAL STANDARD

In reviewing a motion to dismiss, the court considers all allegations in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A filing under the Federal Rules of Civil Procedure should be "short and plain," and it suffices if it notifies the defendant of the principal events. *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). A plaintiff is not required to plead the facts or the elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9 (Pleading Special Matters, *i.e.*, fraud, mistake, etc.). *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Kolupa v. Roselle Park Dist.*, 438 F.3d 713 (7th Cir. 2006) (*Kolupa*). In other words, any movant "tempted to write 'this complaint is deficient because it does not contain . . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Kolupa*, 438 F.3d at 713 (*quoting Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005)) (emphasis in original).

## ANALYSIS

The Defendants present three arguments for dismissal. Specifically, the Defendants move to dismiss the Amended Complaint on the grounds that this Court lacks subject-matter jurisdiction to review state-court judgments alleged to have caused harm to Carrillo under the *Rooker-Feldman* and *Younger* abstention doctrines. In addition, the Defendants argue that the Court lacks subject-matter jurisdiction to consider the claims against them because they are barred by the Eleventh Amendment. Finally, the Defendants assert that Judge Chambers and Judge Dickler have absolute judicial immunity; and Illinois Attorney General Madigan has prosecutorial immunity.

*Review of State-Court Judgments Under the Rooker-Feldman and Younger Abstention Doctrines*

The Defendants move for dismissal of all claims brought by Carrillo that seek the reversal of state-court judgments. The Defendants argue that because aggrieved litigants are barred from relying on Section 1983 as a means for contesting the outcome of state-court litigation, this Court lacks subject-matter jurisdiction to entertain any of Carrillo's claims.

Under the *Rooker-Feldman* doctrine, it is well settled that a federal district court lacks original subject-matter jurisdiction to review state-court judgments and may not entertain suits seeking to set aside state-court rulings. *Gash Assoc. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) (*Gash*), *citing Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983); *see also Edwards v. Ill. Bd. of Admissions to the Bar*, 261 F.3d 723, 728 (7th Cir. 2001) (*Edwards*). The doctrine applies to claims that are actually raised before a state court and claims that are inextricably intertwined with a state-court determination. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir.1999) (*Long*). In determining the applicability of the *Rooker-Feldman* doctrine, "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state-court judgment itself or is distinct from that judgment." *Long*, 182 F.3d at 555, *quoting Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 701-02 (7th Cir.1998) (*Centres*). If the alleged injury of the federal plaintiff is distinct from the state-court judgment and not inextricably intertwined with it, the district court is not barred from hearing the suit. *Centres*, 148 F.3d at 702. In determining whether the alleged injury is inextricably intertwined, the court focuses on whether it is being called upon to review the state-court decision. *Edwards*, 261 F.3d at 729.

Under the *Rooker-Feldman* doctrine, the validity or soundness of the state-court judgment is irrelevant. No matter how wrongful a state-court decision may have been, a federal district court lacks jurisdiction to reverse or modify any judgment where the injury alleged by a federal plaintiff resulted from the state-court judgment itself. *Garry v. Geils*, 82 F.3d 1362, 1365-66 (7th Cir. 1996) (*Garry*). Even where a state-court judgment is erroneous and may have been entered following procedures said to be unconstitutional, pursuit of a Section 1983 action that effectively constitutes a collateral attack on a state-court judgment is not permitted in a federal district court. *Garry*, 82 F.3d at 1366 n5; *see also Gash*, 995 F.2d at 728. Rather, the review of state-court decisions is reserved exclusively to the appellate courts of the various states or the U.S. Supreme Court upon a grant of a writ of *certiorari*. *See Gash*, 995 F.2d at 728; *Edwards*, 261 F.3d at 728. Where a grant of relief by a federal district court would have the effect of voiding a state-court ruling, adjudication of the claim by a district court is barred. *Levin v. Attorney Registration and Disc. Comm'n.*, 74 F.3d 763, 766 (7th Cir. 1996). A federal district court has no choice but to dismiss a suit for lack of jurisdiction where the suit is brought by a defendant asserting an injury at the hands of the state resulting from an adverse ruling made by the state court. *Garry*, 82 F.3d at 1368, n12.

Carrillo specifically prays for the setting aside of all adverse state-court rulings allegedly entered against him illegally. This would have the effect of voiding a state-court judgment alleged to have caused him injury. To the extent Carrillo's claims seek such relief, the claims must be dismissed for lack of subject-matter jurisdiction.

Further, the Defendants assert that to the extent the state-court proceedings are still ongoing, then the *Younger* abstention doctrine bars the Court's intervention in the state-court proceedings. In *Younger v. Harris*, 401 U.S. 37, 43 (1971), the Court held: "Since the beginning

of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." The *Younger* abstention doctrine requires federal courts to abstain from enjoining state proceedings that are: "(1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for the review of constitutional claims, (4) so long as no extraordinary circumstances exist which would make abstention inappropriate." *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 436-37 (1982). "[A]llowing what in effect would be a federal alternative to state appellate process would, besides disrupting and duplicating an ongoing proceeding, cast doubt on the ability of state appellate courts to oversee their trial courts." *Majors v. Englebrecht*, 149 F.3d 709, 713 (7th Cir. 1998).

The state-court proceedings involved important state interests, and there is an adequate opportunity at the state level to raise constitutional challenges. Thus, because Carrillo does not assert that any extraordinary circumstances exist that make abstention inappropriate, to the extent that there are ongoing state-court proceedings, this Court will not intervene.

*Eleventh Amendment and State Sovereignty*

The Defendants also move for dismissal on the ground of state sovereignty. Carrillo seeks compensatory and punitive damages from the named Defendants. Carrillo's Complaint does not specify whether the Section 1983 claims against the Defendants are intended to be brought as official-capacity suits or personal-capacity suits. A Section 1983 claim that fails to specify the capacity in which the defendants are being sued is ordinarily construed to be against them in their official capacity. *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997). The Defendants argue that this Court lacks jurisdiction to entertain Carrillo's suit against them

6

because Judge Chambers, Judge Dickler, and Attorney General Madigan, as State officers, when acting on behalf of the State, enjoy protection under the Eleventh Amendment against money claims brought against them.

Generally, under 42 U.S.C § 1983, a plaintiff may be granted relief where he has been deprived of rights or privileges secured for him by the Constitution and law. Although legal and equitable remedies are contemplated by Section 1983, application of the statute is limited in scope in terms of who may be sued by a plaintiff and under what circumstances they may be sued. In instances where a plaintiff brings a suit against a government official in his official capacity pursuant to Section 1983, the suit is treated as a claim against the particular government entity for which the government officer works. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (*Graham*). Suits against state governments and suits against municipal and county governments are treated differently. In the case of suits against state governments, the Eleventh Amendment's sovereign immunity clause expressly precludes federal courts from exercising jurisdiction over any law or equity claims. *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004); *Will v. Mich. Dept. of St. Police*, 491 U.S. 58, 66 (1989) (*Will*); *Pennhurst St. Sch. v. Halderman*, 465 U.S. 89, 100-01 (1984). Specifically, the Eleventh Amendment's sovereign immunity clause bars federal district courts from adjudicating suits brought by private litigants against states or their agencies, including state officials acting in their official capacities. *Garcia v. City of Chi*, 24 F.3d 966, 969 (7th Cir. 1994) (*Garcia*); *see also Fayemi v. Pucinski*, 155 F.Supp.2d 944, 948 (N.D. Ill. 2001) ("the Eleventh Amendment bars federal courts from exercising jurisdiction over actions brought by a citizen against a state, a state agency, or state official").

Central to ascertaining liability for damages under Section 1983 is the status of the government entity by which the government officer is employed. State law determines whether a particular official is to be considered the legal equivalent of the State itself. *Garcia*, 24 F.3d at 969. Under Illinois law, "a state's attorney is a state, not a county, official." *Ingemunson v. Hedges*, 133 Ill.2d 364, 369 (1990). Therefore, any suit against a state's attorney in Illinois who is acting in his official capacity is construed to be, and is treated as, a suit against the State. *See Will*, 491 U.S. at 71 ("a suit against a state official is not a suit against the official, but rather is a suit against the official's office," which is "a suit against the State itself."). In Illinois, as a matter of law, the Illinois Attorney General, acting in her official capacity, is the legal equivalent of the State. *See Garcia*, 24 F.3d at 969; *see also Graham*, 473 U.S. at 166.

Because the Defendants were acting as state government officers – in their capacity as either Illinois state-court judges or as the Illinois Attorney General – Carrillo is unable to prove any set of facts that would entitle him to relief under Section 1983. Therefore, to the extent Carrillo's Complaint is an official-capacity suit against the Defendants, all the Section 1983 claims against the Defendants are dismissed.

*Immunity*

The Defendants also move for dismissal on the ground they are shielded from Section 1983 suits in their individual capacities by absolute prosecutorial (as to Attorney General Madigan) and judicial (as to Judge Chambers and Judge Dickler) immunity.

The Defendants assert the Section 1983 claims against Judge Chambers and Judge Dickler should be dismissed because they are protected by judicial immunity. The common-law doctrine of absolute judicial immunity protects judges from civil liability for their judicial actions. *Brokaw v. Mercer County, et al.*, 235 F.3d 1000 (7th Cir. 2000). Judges cannot

be held liable for their judicial acts as long as they were acting within their jurisdiction. *Stump v. Sparkman*, 435 U.S. 349 (1978). There are three factors which generally govern the determination of whether a particular act or omission is entitled to judicial immunity: "(1) whether the act or decision involves the exercise of discretion or judgment, or is rather a ministerial act which might as well have been committed to a private person as a judge; (2) whether the act is normally performed by a judge; and (3) the expectations of the parties, *i.e.*, whether the parties dealt with the judge as judge." *Lowe v. Letsinger*, 772 F.2d 308, 312 (7th Cir.1985); *Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005).

In this case, all of Carrillo's allegations against Judge Chambers and Judge Dickler concern the exercise of their discretion in presiding over his case, acts normally performed by judges and the parties in their roles of judge and litigant. Therefore, Judge Chambers and Judge Dickler are absolutely immune from prosecution on this suit.

Further, to the extent that Illinois Attorney General Madigan's action can be construed as *quasi*-judicial, she is also protected from suit. Absolute judicial immunity also shields *quasi*-judicial actors, like the Attorney General of Illinois, from liability for civil damages arising out of the performance of her job. *Killenger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004). The Defendants assert that the claims against Illinois Attorney General Madigan should be dismissed because she is protected by prosecutorial immunity. It is well-settled that prosecutors are absolutely immune from a suit for damages under Section 1983 for initiating a prosecution and presenting the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (*Imbler*). Further, it is well-established that a prosecutor is entitled to absolute immunity from suit under § 1983 with respect to certain types of official conduct, including initiation and pursuit of criminal prosecution, presentation of the state's case at trial and any other conduct that is closely

associated with the judicial process. *See Mendenhall v. Goldsmith*, 59 F.3d 685, 689 (7th Cir. 1995); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (*Buckley*); *Imbler*, 424 U.S. at 427. Prosecutors are entitled to "absolute immunity when their actions are within the scope of their prosecutorial duties." *Arnold v. McClain*, 926 F.2d 963, 967 (10th Cir. 1991); *see, e.g., Wolfe v. Perry*, 412 F.3d 707, 722 (6th Cir.). This protection of immunity includes a prosecutor's decision not to pursue charges, as well. *Potts v. O'Malley*, 1995 WL 745960 at 3 (N.D. Ill. Dec. 1, 1995) (*Potts*), *citing Ross Yordy Const. Co. v. Naylor*, 55 F.3d 285, 287 (7th Cir. 1995).

In his response to Defendants' Motion to Dismiss, Carrillo argues his claim that Illinois Attorney General Madigan's failure to investigate and shut down Life Span, a non-profit organization that represented Carrillo's wife in the state-court proceedings, is not barred. However, because all of Carrillo's allegations against Illinois Attorney General Madigan concern the performance of prosecutorial duties, the alleged conduct constitutes activities and actions "within the scope of [her] prosecutorial duties" integral to the judicial process. Carrillo's claim against Illinois Attorney General Madigan is barred by absolute prosecutorial immunity.

Accordingly, all Section 1983 claims by Carrillo against all three Defendants are dismissed.

*Claims Brought Under Sections 1985 and 1986*

Carrillo specifically alleges in the statement of jurisdiction that, in addition to the claims brought pursuant to 42 U.S.C. § 1983, claims are brought pursuant to 42 U.S.C. § 1985 and § 1986. Notwithstanding Carrillo's general assertion of claims of jurisdiction under Sections 1985 and 1986, the Amended Complaint contains no statement of conduct that provides notice the Defendants violated either of these Sections.

Under the Federal Rules of Civil Procedure, notice pleading requires only that the

complaint state a claim. *See Kolupa*, 438 F.3d at 714 ("Federal complaints plead claims rather than facts."). Although there are no special pleading requirements for civil rights matters, *Walker*, 288 F.3d at 1007, 1011 (*Walker*), and plaintiffs are not required to plead facts or legal theories, a plaintiff's complaint must set forth "a short statement, in plain (that is, ordinary, non-legalistic) English, of the legal claim" against the defendant. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) (*Higgs*). Where a non-specific, general claim is asserted in a complaint "without identifying acts claimed to have constituted the claim," the complaint is defective. *See, e.g., Higgs*, 286 F.3d at 439. Where a complaint contains no more than a bare allegation of conspiracy, it fails "to enable [the defendant] to prepare his defense or for the district court to determine whether the claim [is] within the ballpark of possibly valid conspiracy claims, the two functions [assigned] to notice pleading." *Walker*, 288 F.3d 1008.

Furthermore, under Section 1985(3), a plaintiff must plead "some racial, or perhaps, otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Cole v. Noonan & Lieberman, Ltd.*, 2005 WL 2848446 at 7 (N.D. Ill. Oct. 26, 2005) (*Cole*), quoting *Griffin v. Breckenridge*, 403 U.S. 88 (1971) (*Griffin*). This requirement is narrowly construed to prevent Section 1985 from being converted into a "general federal tort law." *Griffin*, 403 U.S. at 102. Purported classes include those based on race, ethnic origin, sex, religion, and political loyalty. *See Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 203 (7th Cir. 1985).

Carrillo's Amended Complaint does not set out even a simple conclusory allegation that the Defendants conspired or acted in concert against him. Nor does Carrillo's Amended Complaint indicate any approximate time of an alleged conspiracy agreement or even mention the word "conspire" or any of its derivative forms. In addition, Carrillo's Amended Complaint

11

contains no allegation as to racially or other class-based invidiously discriminatory animus against Carrillo, as is required. Because Carrillo has not alleged any conspiratorial conduct and has not alleged any racial or otherwise class-based invidiously discriminatory animus behind the Defendants' actions, dismissal of his Section 1985 claim(s) is warranted.

Pursuant to Section 1986, a condition precedent to stating a valid Section 1986 claim is a valid Section 1985 claim. *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984). Because Carrillo's Amended Complaint fails to adequately state a claim under Section 1985, Carrillo's Section 1986 claim is also dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Judge Chambers, Judge Dickler, and Illinois Attorney General Madigan's Motion to Dismiss is granted. All claims brought against the Defendants seeking monetary damages under 42 U.S.C. § 1983 and all claims seeking grants of relief necessitating the review of state-court judgments that have been alleged to have caused injury to Carrillo are dismissed with prejudice. All claims seeking injunctive relief and all suits brought pursuant to 42 U.S.C. § 1985 or 42 U.S.C. § 1986 are dismissed without prejudice to refile consistent with the foregoing analysis and in accordance with Federal Rule of Civil Procedure 11 within 30 days of this Order.

Dated: January 22, 2007

JOHN W. DARRAH
United States District Court Judge